[No. D046188. Fourth Dist., Div. One. Sept. 21, 2006.]

AMY D. de LEON, Plaintiff and Respondent, v.
GREGORY S. JENKINS, Defendant and Appellant;
SAN DIEGO COUNTY DEPARTMENT OF CHILD SUPPORT
SERVICES, Intervener and Respondent.

**Counsel**

Robert M. Garland for Defendant and Appellant.

Amy D. de Leon, in pro. per., for Plaintiff and Respondent.

Bill Lockyer, Attorney General, Thomas R. Yanger, Assistant Attorney General, Paul Reynaga and Mary Dahlberg, Deputy Attorneys General, for Intervener and Respondent.

OPINION

IRION, J.—In September 2003, the San Diego County Department of Child Support Services (DCSS) registered a New Mexico child support order in San Diego County Superior Court and in item 1, "Case Summary," on an accompanying "Registration Statement," listed zero dollars of arrears. In proceedings following the registration, the trial court adjudicated the amount of arrears owed under the order, including those incurred prior to registration, and determined that Gregory S. Jenkins, the obligor under the support order, owed over $3,000 in child support to his former wife, Amy D. de Leon.

In this appeal Jenkins contends that because neither he nor de Leon challenged the registration of the out-of-state support order and its statement that there were no arrears, within the 20-day period provided by statute the statement of arrears was "confirmed by operation of law" under Family Code[1] section 4955, subdivision (b), precluding any further adjudication of the preregistration amount of arrears.

As discussed below, we disagree. The statute only binds a nonregistering party who fails to object prior to registration "with respect to any matter *that could have been asserted at the time of registration*." (§ 4957, italics added.) Under the statute, de Leon could not have objected to an understatement of arrears at the time of registration, and consequently, she was not precluded from later objecting on that ground.

## FACTS

After almost four years of marriage, Jenkins and de Leon were divorced by a New Mexico court in February 2002. As part of the divorce proceedings, the parties entered into a Marital Settlement Agreement (Agreement) that was incorporated into the dissolution judgment issued by the New Mexico court. The judgment provides that Jenkins is to pay child support of $915 a month for the parties' two children, 100 percent of the childrens' daycare expenses and a pro rata share of their uninsured medical expenses.

On September 4, 2003, DCSS registered the New Mexico judgment in superior court in San Diego County where de Leon now resides. DCSS filed a standard form "Registration Statement" along with the New Mexico judgment.[2] On the form, under "Support Amount/Frequency," DCSS listed "$915.00/monthly," and under the "Amount of Arrears," DCSS listed

---

[1] All statutory references are to the Family Code unless otherwise specified.

[2] The Judicial Council of California has approved standard forms for registering an out-of-state support order, notifying the nonregistrant of the registration, and filing an objection to a registered order.

"$0.00." The "Period of Computation" of the arrears listed was left blank. At the bottom of the form, under "Other," DCSS noted "Medical Only Case."

The court clerk sent Jenkins a "Notice of Registration of Out of State Support Order" and attached the Registration Statement and New Mexico judgment. The notice warns: "If you fail to contest the validity or enforcement of the attached order within 25 days of the date this notice was mailed, the order will be confirmed by the court and you will not be able to contest any portion of the order including the amount of arrears as specified in item 1 of the Registration Statement." There is no indication in the record that any notice was sent to de Leon. Neither Jenkins nor de Leon filed any objection to the registration.

On May 21, 2004, Jenkins received a notice from the United States Department of the Treasury indicating that a portion of his federal income tax refund had been intercepted by DCSS. Jenkins filed a motion in the superior court requesting that these funds be returned to him; Jenkins claimed he was not delinquent in his child support payments, and that, in fact, de Leon owed him money. De Leon then filed a request seeking a judicial determination of unreimbursed medical and daycare expenses under the New Mexico judgment.

The trial court held a hearing on the matters on September 16, 2004, and again on October 28, 2004. After the hearings, the court determined that Jenkins owed de Leon $3,145.26 in daycare costs and uninsured medical expenses (a total that included costs incurred prior to the registration of the order), and ordered that those sums be paid from Jenkins's federal income tax refund.[3]

## DISCUSSION

Jenkins's primary contention on appeal is that the trial court erred in interpreting the governing statutory law—sections 4954, 4955 and 4957—to allow it to adjudicate preregistration arrears despite de Leon's failure to object within the statutorily prescribed time period to the Registration Statement's pronouncement that no arrears were owed. We evaluate this argument below after setting out the applicable statutory provisions.

---

[3] Jenkins does not challenge the trial court's determination that but for the contrary statement in the Registration Statement, which he contends is binding on all parties, he would, in fact, owe this sum under the terms of the New Mexico child support order.

A

*Statutory Framework*

■ The Uniform Interstate Family Support Act (UIFSA), section 4900 et seq., which has been adopted by all 50 states, "governs, inter alia, the procedures for establishing, enforcing and modifying child support orders in cases in which more than one state is involved." (*In re Marriage of Crosby & Grooms* (2004) 116 Cal.App.4th 201, 206 [10 Cal.Rptr.3d 146].) Together with the Federal Full Faith and Credit for Child Support Orders Act (28 U.S.C. § 1738B), "the UIFSA ensures that in every case only one state exercises jurisdiction over child support at any given time." (*In re Marriage of Crosby & Grooms*, at p. 206.) UIFSA was designed to eliminate the "multiple support order system" that had evolved under the previous uniform statute, the Revised Uniform Reciprocal Enforcement of Support Act (RURESA). (UIFSA Com., 29F West's Ann. Fam. Code (2004) foll. § 4950, p. 541.)[4]

■ Under UIFSA as enacted in California, a "support order" of another state may be registered in this state "for enforcement" (§ 4950) by sending a "letter of transmittal to the tribunal requesting registration and enforcement," two copies of the order to be registered, "[a] sworn statement by the person requesting registration or a certified statement by the custodian of the records showing the amount of any arrearage," and the name and other identifying information regarding the obligor and obligee of the order. (§ 4951, subd. (a).) Once registered, the out-of-state order "is enforceable in the same manner and is subject to the same procedures as an order issued by a tribunal of this state," but may not, absent certain limited circumstances not pertinent here, be modified by the California court. (§ 4952; see *Scheuerman v. Hauk* (2004) 116 Cal.App.4th 1140, 1144 [11 Cal.Rptr.3d 125] (*Scheuerman*).)

■ An out-of-state support order need not be registered by the obligee of the order, but may be registered by "a stranger to the litigation, for example a grandparent or an employer of an alleged obligor," or, as in this case, by a government agency such as DCSS. (UIFSA Com., 29F West's Ann. Fam. Code, *supra*, foll. § 4955, p. 556.) Under other statutory law, DCSS is authorized to register an out-of-state support order on its own initiative when the subject child "is receiving public assistance, including Medi-Cal," or after being "requested" to do so when the child is not receiving public assistance. (§ 17400, subd. (a); see *Codoni v. Codoni* (2002) 103 Cal.App.4th 18, 21 [126 Cal.Rptr.2d 423].)

---

[4] "The official comments to the UIFSA provide guidance in ascertaining the intent of the act." (*In re Marriage of Crosby & Grooms, supra*, 116 Cal.App.4th at p. 206, fn. 3.)

UIFSA provides that whenever an out-of-state support order is filed, "the registering tribunal shall notify the nonregistering party." (§ 4954, subd. (a).) The notice "shall inform the nonregistering party: [¶] (1) That a registered order is enforceable as of the date of registration in the same manner as an order issued by a tribunal of this state; [¶] (2) That a hearing to contest the validity or enforcement of the registered order must be requested within 20 days after notice; [¶] (3) That failure to contest the validity or enforcement of the registered order in a timely manner will result in confirmation of the order and enforcement of the order and the alleged arrearages and precludes further contest of that order with respect to any matter that could have been asserted; and [¶] (4) Of the amount of any alleged arrearages." (§ 4954, subd. (b).) "If the nonregistering party fails to contest the validity or enforcement of the registered order in a timely manner, the order is confirmed by operation of law" (§ 4955, subd. (b)), and such confirmation "precludes further contest of the order with respect to any matter that could have been asserted at the time of registration" (§ 4957).

B

*Under the Statute, a Nonregistering Obligee Is Not*
*Precluded from Objecting to an Understatement of Arrears*
*After Registration*

Sections 4954, 4955 and 4957 provide that absent timely objection, the statement of arrears included in a registration statement becomes binding on "the nonregistering party." (§§ 4954, 4955.) Jenkins contends that the application of these sections to the instant case establishes that DCSS's registration of the New Mexico support order and the accompanying statement of zero arrears was final as to de Leon because she is literally a "nonregistering party" who failed to object within 20 days of registration. (§§ 4954, 4955.) Consequently, Jenkins argues, the trial court was precluded from adjudicating the amount of preregistration arrears owed under the order. We disagree.

Even were we to accept Jenkins's contention that the statutory references in sections 4954 and 4955 to "the nonregistering party," reasonably read, encompass a nonregistering *obligee* such as de Leon, Jenkins's argument fails. The statute does not provide that confirmation of the order precludes *all* later objections raised by a nonregistering party. Rather, it states only that "[c]onfirmation of a registered order . . . precludes further contest of the order with respect to any matter *that could have been asserted at the time of registration*." (§ 4957, italics added.) An objection to the statement of

arrears in the DCSS's registration statement is not a matter that de Leon "could have . . . asserted at the time of registration" (§ 4957), because such an objection is not one of the seven "narrowly defined defenses to registration" permitted under the statute. (UIFSA Com., 29F West's Ann. Fam. Code, *supra*, foll. § 4956, p. 559; § 4956, subd. (a).)

■ Section 4956, subdivision (a) lists the following permissible grounds for objection to registration of an out-of-state child support order: "(1) The issuing tribunal lacked personal jurisdiction over the contesting party. [¶] (2) The order was obtained by fraud. [¶] (3) The order has been vacated, suspended, or modified by a later order. [¶] (4) The issuing tribunal has stayed the order pending appeal. [¶] (5) There is a defense under the law of this state to the remedy sought. [¶] (6) Full or partial payment has been made. [¶] (7) The statute of limitation under Section 4953 precludes enforcement of some or all of the arrearages." These are the only permitted objections to registration (§ 4956, subds. (a), (c); UIFSA Com., 29F West's Ann. Fam. Code, *supra*, foll. § 4957, p. 561), and none can fairly be read to encompass an objection that the amount of arrears listed on a registration statement is *understated.* The only pertinent objection allowed by the statute—that "[f]ull or partial payment has been made"—would only apply to an *obligor* contending that arrears are *overstated.* (§ 4956, subd. (a)(6); see also § 4955, subd. (a) [nonregistering party may contest amount of arrearages "pursuant to Section 4956"].) Thus, even accepting Jenkins's premise that de Leon is "the nonregistering party," the statute by its terms does not bar her postregistration challenge to the understatement of arrears because de Leon could not have objected on that basis at the time of registration.[5]

The official comment to UIFSA section 4956, which Jenkins relies on, supports rather than contradicts our analysis.[6] The comment states that "it seems likely" that where a nonregistering obligee fails to object to an order on the grounds that the order is not controlling, "both the registering and

---

[5] The record also suggests another basis upon which de Leon was unable to object to the statement of arrears at the time of registration—she was not provided with notice of the statement. The record contains a certificate executed by the court clerk that notice of DCSS's registration of the New Mexico judgment was sent to Jenkins but no such indication that any notice was sent to de Leon, and de Leon states in her brief on appeal that she was "not aware of the misstatements of the September 4, 2003 Registration Statement." (See § 4954, subd. (a) [requiring only that "the registering tribunal shall notify *the* nonregistering party" of the registration (italics added)].)

[6] We emphasize that we need not and do not decide whether Jenkins would be able to bind de Leon to *her own* erroneous statement of arrears in a registration statement, or an accompanying affidavit. Rather, we only decide whether Jenkins can, on the facts presented here, invoke the statutory language to bind de Leon to *DCSS's* erroneous statement of arrears.

nonregistering party . . . will be estopped from subsequently collaterally attacking the confirmed order on the basis that the unmentioned 'true order should have been confirmed instead.' " (UIFSA Com., 29F West's Ann. Fam. Code, *supra*, foll. § 4956, p. 560.)[7] The clear distinction between the situation addressed in the comment and that at issue here is that an objection that the filed order is not the correct order *is* one of the seven defenses to registration permitted by the statute. (§ 4956, subd. (a)(3); Sampson, *Uniform Interstate Family Support Act (With Unofficial Annotations)* (1993) 27 Fam. L.Q. 93, 155, fn. 138 [coreporter for UIFSA Drafting Committee notes that term " 'nonregistering party' " was used rather than " 'respondent' " or " 'obligor' " in UIFSA only to allow for "theoretical[] possib[ility]" that obligor would seek to register an order, and the obligee would contest registration on the grounds that the order sought to be registered was not the correct order].)

◼ Thus, the official comment to section 4956—the only suggestion in the uniform statute or its comments of a scenario where the absence of a preregistration objection would have preclusive effect on a nonregistering *obligee*—is consistent with our conclusion that the preclusive effect of registration depends upon the availability of an opportunity to object under one of the "narrowly defined defenses to registration" provided by the statute. (UIFSA Com., 29F West's Ann. Fam. Code, *supra*, foll. § 4956, p. 559; § 4956, subd. (a).) Where a nonregistering obligee is provided a preregistration opportunity to object—such as on the ground that the incorrect order has been filed—the obligee may be precluded from later objecting on that ground. Where a nonregistering obligee is not provided such an opportunity—for example, with respect to an understatement of arrears—the obligee cannot be precluded from later objecting on that ground. (See also *Randone v. Appellate Department* (1971) 5 Cal.3d 536, 550 [96 Cal.Rptr. 709, 488 P.2d 13] [" 'absent a countervailing state interest of overriding significance' [citation], due process requires, at a minimum, that an individual be given a meaningful opportunity to be heard prior to being subjected by force of law to a significant deprivation"]; *Dyna-Med, Inc. v. Fair Employment & Housing*

---

[7] The official comment to UIFSA section 4956 states in pertinent part: "In a multiple order situation, if the nonregistering party contests the allegation regarding the controlling order, either because it allegedly has not been registered or because another order has been misidentified as such, the nonregistering party may defend against enforcement of another order by asserting the existence of a controlling order. Presumably the defense must be substantiated by registration of the other alleged controlling order to be effective. [¶] . . . [¶] . . . [I]t seems likely that res judicata requires that both the registering and nonregistering party who fail to register the 'true' controlling order will be estopped from subsequently collaterally attacking the confirmed order on the basis that the unmentioned 'true order should have been confirmed instead.' " (UIFSA Com., 29F West's Ann. Fam. Code, *supra*, foll. § 4956, pp. 559–560.)

*Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323] ["A statute should be construed whenever possible so as to preserve its constitutionality"].)[8]

■ Under this analysis, it is clear that de Leon was not precluded from objecting after registration of the order on the ground that the amount of arrears in the registration statement filed by DCSS was understated. Consequently, the trial court did not err in adjudicating the amount of preregistration day care and medical arrears that Jenkins owed under the child support order.

## C

### *Reversal Is Not Warranted for Any Error in the Trial Court's Denial of Jenkins's Motion to Modify Its Order*

Jenkins also contends that the trial court abused its discretion when it denied his request under Code of Civil Procedure section 473, subdivision (d),[9] to modify its order to include an explicit finding that the court had "jurisdiction" to determine arrears.[10] We need not reach the merits of this

---

[8] Jenkins's reliance on *Scheuerman, supra,* 116 Cal.App.4th 1140, is unavailing. In that case, an obligee attempted to enforce an Arizona judgment in California after an Arizona court ruled that there were zero arrears due under the order, and child support obligations had otherwise expired. The appellate court ruled that given the Arizona court's ruling and the California court's role under UIFSA of simply "enforc[ing]" the operative out-of-state support order, the California court had no power to further adjudicate arrears due under the order, even though the failure to obtain payment was partially due to negligence of the support agencies involved. (*Scheuerman,* at p. 1145.) Here, there is no analogous New Mexico court ruling as to the amount of arrears, and thus *Scheuerman* has no application.

Similarly, Jenkins's reliance on *In re Marriage of Chapman* (1988) 205 Cal.App.3d 253, 259 [252 Cal.Rptr. 359], is misplaced as it was decided under the previous statutory framework (RURESA) and considered only the binding effect of registration on an *obligor,* not an obligee. (See *In re Marriage of Chapman,* at p. 259 [noting that "[t]he pivotal question . . . is, 'What is "confirmed" by the operation of [Code of Civil Procedure] section 1699, subdivision (b), *when an obligor* does not petition within 20 days?' " and concluding under prior law that solely "[t]he registered *order* is confirmed, not the registered arrearage statement" (first italics added)].)

[9] Code of Civil Procedure section 473, subdivision (d) states: "The court may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed, and may, on motion of either party after notice to the other party, set aside any void judgment or order."

[10] Although the trial court orally rejected Jenkins's argument that it did not have jurisdiction to determine the amount of arrears because that amount had become final under the statute, the court's subsequent written order did not include a specific finding to that effect. Consequently, Jenkins filed a request that the court "correct" its written order to include an explicit jurisdictional finding. The court rejected this request as unnecessary because the finding was implicit in the order.

contention, as it provides no basis for reversal in light of Jenkins's failure to show any prejudice from the trial court's purportedly erroneous ruling.

Reversal for an abuse of discretion is not warranted absent a showing that "a miscarriage of justice has resulted" from the trial court's error. (*Silver v. Boatwright Home Inspection, Inc.* (2002) 97 Cal.App.4th 443, 449 [118 Cal.Rptr.2d 475] [" ' "The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power," ' " citing *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193]]; see also Code Civ. Proc., § 475 [judgment will not be disturbed based on "any error, [or] improper ruling" unless the "party complaining or appealing sustained and suffered substantial injury," and it appears "that a different result would have been probable if such error . . . had not occurred"].)

Jenkins fails to sustain his burden of demonstrating that a miscarriage of justice occurred from the trial court's allegedly erroneous failure to modify its order to include a specific finding that it had jurisdiction to determine the amount of arrears. As the trial court stated, a finding to that effect was implicit in its determination of arrears. In addition, the trial court orally considered and rejected Jenkins's argument that it lacked jurisdiction at the October 2004 hearing, and again made that determination explicit at the March 2005 hearing on Jenkins's Code of Civil Procedure section 473 motion. Thus, we can see no prejudice to Jenkins, and certainly no miscarriage of justice, that resulted from the trial court's refusal to modify its order under Code of Civil Procedure section 473. Consequently, we conclude that Jenkins fails to meet his burden of demonstrating an abuse of discretion and reversal is therefore not warranted on this ground.[11]

---

[11] We grant Jenkins's October 14, 2005 amended request that we take judicial notice of a Texas state court decision and certain comments of the National Conference of Commissioners on Uniform State Laws—although we find these items to be of minimal relevance to the issues on appeal. We deny the request for judicial notice of "the Orders and filings in San Diego Superior Court Case No. D478015" to the extent such orders and filings are not included in the record on appeal. (*Hayward Area Planning Assn. v. City of Hayward* (2005) 128 Cal.App.4th 176, 182 [26 Cal.Rptr.3d 783] [judicial notice properly denied as to matters that are irrelevant]; Cal. Rules of Court, rule 22(a)(2) [to obtain judicial notice in court of appeal party must "serve and file a copy" of the matter to be noticed or explain why it is not practicable to do so].)

## DISPOSITION

The order is affirmed.

McConnell, P. J., and O'Rourke, J., concurred.